## A02A1325. WILSON v. THE STATE.
### (569 SE2d 640)

BLACKBURN, Chief Judge.

Matthew Keith Wilson appeals his convictions for possession of controlled substances, following a jury trial. He was convicted of possession of marijuana with intent to distribute (Count 1), possession of more than an ounce of marijuana (Count 2), possession of alprazolam (Count 3), possession of a firearm by a convicted felon (Count 4), and not keeping prescribed drugs in the original container (Count 5). In sentencing Wilson, the trial court merged Count 1 with Count 2, as a matter of law, and Count 3 with Count 5, as a matter of fact.

On appeal, Wilson argues that the evidence was insufficient to support his convictions for possession of the controlled substances, as the contraband was found in an area equally accessible to others, and not on Wilson's property. He further argues that the trial court erred in admitting into evidence (1) certain drawings, which were not drawn to scale, and (2) reports and test results about which the preparer had testified at trial. We affirm.

1. Wilson asserts that there was insufficient evidence to support his convictions for possession of either marijuana or alprazolam. Specifically, he argues that the evidence was insufficient because the controlled substances were found, not on his own property, but on property to which others had access, and because there was no evidence, other than his mere presence, connecting him with the drugs. We disagree.

> On appeal from a criminal conviction, the evidence is construed in the light most favorable to the verdict of guilt, and the presumption of innocence no longer applies. An appellate court does not weigh the evidence or judge the credibility of the witnesses, but only determines whether the adjudication of guilt is supported by sufficient competent evidence.

*Bohannon v. State*.[1]

---

[1] *Bohannon v. State*, 208 Ga. App. 576 (1) (431 SE2d 149) (1993).

> A person who, though not in actual possession, knowingly has both the power and intention at a given time to exercise dominion or control over a thing is then in constructive possession of it. A finding of constructive possession must be based upon some connection between the defendant and the contraband other than spatial proximity.

(Citations and punctuation omitted.) *Noble v. State*.[2] "While mere presence at the scene of the commission of a crime is not sufficient evidence to convict one of being a party thereto, presence, companionship, and conduct before and after the offense are circumstances from which one's participation in the criminal intent may be inferred." (Punctuation omitted.) *Bennett v. State*.[3] "Possession can be proven by circumstantial as well as direct evidence. All of the competent evidence adduced at trial, which was admissible against [Wilson], may be considered to show his constructive or joint possession." (Citation and punctuation omitted.) *Smith v. State*.[4] "Whether the circumstantial evidence is sufficient to exclude every reasonable hypothesis save that of defendant's guilt is a question for the jury unless the verdict is insupportable as a matter of law." *Martin v. State*.[5] Similarly, "where there is evidence other than 'equal access' connecting an accused to contraband, it is for the jury to determine guilt or innocence." (Punctuation omitted.) *Blitch v. State*.[6]

In this case, there was something more to show participation in the illegal acts than mere presence. Viewed in the light most favorable to support the verdict, the evidence authorized the jury to find that on March 23, 2001, a confidential informant was sent to Wilson's residence in rural Floyd County to make a controlled buy of marijuana. Investigators with the Rome Floyd Metro Task Force watched as the informant drove up a driveway and parked at Wilson's residence. Approximately 15 minutes later, the informant met the investigators and turned over a one-ounce package of marijuana.

The investigators obtained a warrant to search Wilson's house. Prior to the arrival of the investigators at Wilson's house, a sheriff's officer, Captain Larry Payne, was sent to the house to secure the scene. As Payne drove up, Wilson, who had been standing by his truck, walked into a nearby wooded area and then returned as Payne was getting out of his car. Minutes later, task force investigators arrived with two canine units. After Wilson's house was cleared, the

---

[2] *Noble v. State*, 225 Ga. App. 470, 471 (484 SE2d 78) (1997).
[3] *Bennett v. State*, 202 Ga. App. 699 (415 SE2d 310) (1992).
[4] *Smith v. State*, 210 Ga. App. 451, 453 (4) (a) (436 SE2d 562) (1993).
[5] *Martin v. State*, 201 Ga. App. 716, 718 (1) (b) (411 SE2d 910) (1991).
[6] *Blitch v. State*, 188 Ga. App. 487, 488 (373 SE2d 227) (1988).

lead investigator directed the canine units to begin their search along a trail behind Wilson's house. Within seconds, one of the dogs found a plastic container buried in the ground about 20 yards from the house just off the trail; inside the container were 14 one-ounce bags of marijuana and plastic bags commonly used for packaging marijuana. The area in which this plastic container was found and the part of the trail leading up to this area were the only areas behind the house where the ground was muddy; Wilson's boots and the tires on a four-wheeler he acknowledged having ridden earlier in the day had fresh mud on them. Further along the trail, a dog found an ammo can and a glass jar; both were empty but had an odor of marijuana.

A dog was later taken to the wooded area, into which Wilson had disappeared when Captain Payne arrived, to do an article and evidence recovery search to detect any objects with a fresh human scent. The dog found a small canister containing alprazolam in this area.

The investigators also searched Wilson's house. In the laundry room hidden behind an appliance, the officers found a set of scales of the type commonly used to weigh out drugs. In addition, $1,050 in cash was found between the mattress and the box spring of the bed. The drug dog also alerted to the closet and the side of the bed where most of the money was found. An initial search of the bathroom produced nothing; however, after Wilson used the bathroom, the lead investigator searched the bathroom a second time and found $300 stashed under toilet paper in a trash can he had searched earlier. At trial, Wilson admitted that he had hidden the cash in the bathroom trash can so that the investigators would not find it on him.

In light of this evidence linking Wilson to the drugs, there was evidence other than mere presence and equal access linking Wilson to the contraband. "Accordingly, the evidence, although circumstantial, was sufficient to allow the case to go to the jury and to authorize the jury's finding that [Wilson] was guilty, beyond a reasonable doubt, of possession of" both the marijuana and the alprazolam. *Noble v. State*, supra at 472.

2. Wilson maintains that the trial court committed reversible error by admitting into evidence drawings of the area around his residence done by two of the investigating officers over his objection that they were prejudicial. On appeal, he also argues that the drawings lack probative value because they were not drawn to scale and did not reflect the distance between his house and the area where the drugs were found and were, therefore, prejudicial. We find no merit to this enumeration of error.

The Georgia rule favors the admission of any relevant evidence, no matter how slight its probative value. Evidence

of doubtful relevancy or competency should be admitted and its weight left to the jurors. Where evidence is offered and objected to, if it is competent for any purpose, it is not erroneous to admit it. Admissibility of evidence is a matter which rests largely within the sound discretion of the trial court.

(Citation and punctuation omitted.) *Chesser v. State.*[7]

The officers used the drawings to indicate where, in relation to Wilson's residence, the drugs were found. While the drawings may not have been to scale, as the officers acknowledged on the stand, the officers, when asked by either the State or Wilson, gave estimates of the distances between Wilson's house and the areas where various articles of evidence were found. Wilson's own attorney used the diagrams to cross-examine the officers and offered into evidence photographs of the areas indicated on the drawings. Under these circumstances, we are satisfied that the trial court did not abuse its discretion in admitting these drawings into evidence.

3. In his next enumeration of error, Wilson contends that the trial court erred in admitting into evidence test results and reports done on the suspected controlled substances; he argues that because the individuals who did the testing testified as to the contents of the reports, the reports were cumulative and admitting them into evidence placed undue weight and emphasis on them. Again, we disagree.

The test reports to which Wilson objects were the analysis reports done on the bags of marijuana found behind his house. The analysis reports contained the results of the three required tests in the test protocol: a microscopic examination, a Duquenois-Levine chemical test, and a Fast Blue B chemical test. These marijuana analysis reports are

not subject to the objection[ ] made. "As a writing in proof of an act or transaction, the instant report[s] [were] admissible as *direct evidence* of the manner in which a scientific test was conducted and of the results thereby obtained. The proscription on the jury's possession of 'written testimony' does not extend to documents which are themselves relevant and admissible as original documentary evidence in a case."

(Citations omitted.) *Whiteley v. State.*[8] See also *Starks v. State;*[9] *Bry-*

---

[7] *Chesser v. State*, 228 Ga. App. 164, 166 (1) (b) (491 SE2d 213) (1997).
[8] *Whiteley v. State*, 188 Ga. App. 129, 132 (3) (372 SE2d 296) (1988).
[9] *Starks v. State*, 240 Ga. App. 346, 350 (4) (523 SE2d 397) (1999).

*ant v. State;*[10] *Munda v. State.*[11] Accordingly, admission of these reports was not error.

*Judgment affirmed. Johnson, P. J., and Miller, J., concur.*

DECIDED JULY 26, 2002.

*Timothy J. Crouch,* for appellant.

*Bryant G. Speed II, District Attorney, Martha P. Jacobs, Fred R. Simpson, Assistant District Attorneys,* for appellee.

---

[10] *Bryant v. State,* 270 Ga. 266, 270-271 (3) (507 SE2d 451) (1998).

[11] *Munda v. State,* 172 Ga. App. 857, 860 (2) (324 SE2d 799) (1984).