## A11A0983. BONE v. THE STATE.
(715 SE2d 789)

MIKELL, Judge.

After a bench trial in the Superior Court of Houston County, Eric Milton Bone was convicted of possession of methamphetamine, giving a false name, misdemeanor obstruction and insufficient taillights. Bone appeals the trial court's denial of his motion for directed verdict and motion for new trial. Finding no reversible error, we affirm.

"On appeal from a criminal conviction, the evidence must be construed in a light most favorable to the verdict and [Bone] no longer enjoys a presumption of innocence."[1] An appellate court does not weigh the evidence or determine witness credibility.[2]

So viewed, the record shows that Officer Carder Gravitt stopped a vehicle around midnight for operating with insufficient taillights.

---

[1] (Footnote omitted.) *Hillman v. State*, 296 Ga. App. 310-311 (674 SE2d 370) (2009).

[2] *Benbow v. State*, 288 Ga. 192, 193 (702 SE2d 180) (2010).

Gravitt approached the driver's side door of the vehicle and asked the driver, Bone, where he was from and for his driver's license. Bone stated that he was coming from a friend's house and that he did not have his driver's license with him. Bone then provided Gravitt with a false name and date of birth. Gravitt suspected that Bone was under the influence of either alcohol or drugs, and called his supervisor to the scene. Gravitt asked Bone to step from the vehicle, and noticed Bone stuff something into his waistband as he complied with the request. Bone then exited the vehicle, shut the door, and began to run.

Gravitt chased Bone and tackled him to the ground. Bone continued to resist, and Gravitt testified that he felt a tug on his belt during the struggle. Bone escaped and ran across the street. Gravitt again tackled Bone. He reached for his taser, but found that it was missing. He used pepper spray to subdue Bone, who eventually ceased his resistance and was handcuffed. Gravitt called for a van, and sat with Bone until another officer arrived. Once Bone was secured in the back of a police car, Gravitt went back to the scene of the first struggle and found his taser and a white pill bottle containing methamphetamine on the ground.

Gravitt returned to his patrol car and began to move Bone to the waiting police van. Gravitt asked Bone who owned the vehicle, and Bone replied that he did not know whose vehicle it was, but that he had given somebody drugs so that he could use the car.

Bone testified that there was a passenger with him in the car, Shawn Michael Phillips, and that he had only known Phillips for two days. He testified that he never saw Phillips leave until he saw Phillips on his knees with an officer by the vehicle, and that he never saw Phillips in possession of the pill bottle.

1. Bone contends that the trial court erred in denying his motion to suppress the statement he made in response to Gravitt's interrogation regarding the ownership of the vehicle. He contends that the questioning constituted "custodial interrogation" requiring the administration of the *Miranda*[3] warnings, which had not yet been given, because the officer should have known that his question was likely to elicit an incriminating response. We disagree.

On appellate review of a trial court's denial of a motion to suppress, "the trial court's findings on disputed facts will be upheld unless clearly erroneous, and its application of the law to undisputed facts is subject to de novo review."[4] Whether or not "a statement was the result of an interrogation or was instead volunteered is a

---

[3] *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).
[4] (Citation omitted.) *Velazquez v. State*, 282 Ga. 871, 877 (8) (655 SE2d 806) (2008).

determination of fact for the trial court, and it will not be disturbed unless it is clearly erroneous."[5]

A statement made by a defendant is voluntary when it is made "without being questioned or pressured by an interrogator."[6] Such statement is "admissible despite the absence of *Miranda* warnings."[7] Thus, "a defendant's voluntary and spontaneous outburst not made in response to custodial questioning or interrogation is admissible at trial."[8]

In the case at bar, there was evidence to support findings that prior to the defendant's inculpatory comments there was no interrogation or questioning by Gravitt intended to garner information regarding a crime, but merely a question regarding the car's ownership. The evidence adduced on this issue shows that after Bone had been tackled, sprayed with pepper spray, handcuffed and placed in the back of a patrol car, he voluntarily started a conversation with Gravitt by admitting that he was not who he previously stated he was. Gravitt then asked Bone, who was currently only suspected for fleeing a police officer and possession of contraband found at the scene: "Well, whose vehicle is this?" Bone replied that he did not know whose vehicle it was, but that he gave somebody drugs so that he could use the car. When asked what he was expecting to learn in response to his question, Gravitt testified that he just wanted to know who the car belonged to. Bone testified at trial and denied that he told Gravitt that he gave somebody drugs. The trial court found that Bone was in custody at the time he made his statement, but that the officer's question about the ownership of the car was not designed to lead to incriminating evidence, but rather to garner information needed to most efficiently remove the car from the side of the road.

As the trial court's findings of fact are supported by the testimony of the police officer, the trial court's determination that Bone's statements were not solicited and therefore were not protected under *Miranda* is not clearly erroneous.[9]

2. Bone also claims that the trial court erred in denying his motion for a directed verdict of acquittal as to the charge of possession of methamphetamine. Bone argues that the evidence was not sufficient to convict him of possession of the methamphetamine

---

[5] (Citation omitted.) Id. Accord *Sampson v. State*, 209 Ga. App. 213 (2) (433 SE2d 136) (1993).

[6] (Citation and punctuation omitted.) *State v. Davison*, 280 Ga. 84, 87 (2) (623 SE2d 500) (2005).

[7] Id.

[8] (Citation omitted.) *Velazquez*, supra at 878 (8).

[9] Id.

found near the area where Gravitt tackled him to the ground, because it was possible that the methamphetamine was placed there by his passenger or by another person in the residential area. We disagree.

"The standard of review for denial of a motion for directed verdict of acquittal is the same as for determining the sufficiency of the evidence to support a conviction."[10] Therefore, we construe the evidence in favor of the trier of fact's verdict and "determine whether a rational trier of fact could have found [Bone] guilty beyond a reasonable doubt of the crimes of which [he] was convicted."[11]

Possession may be actual or constructive.[12] "A person who, though not in actual possession, knowingly has both the power and intention at a given time to exercise dominion or control over a thing is then in constructive possession of it."[13] "A finding of constructive possession must be based upon some connection between the defendant and the contraband other than spatial proximity."[14] Further, when constructive possession is established wholly on circumstantial evidence, "the law requires that the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused."[15] To warrant a conviction on such evidence, "the proved facts need exclude only *reasonable* hypotheses — not bare possibilities that the crime could have been committed by someone else."[16] And "whether or not in a given case circumstances are sufficient to exclude every reasonable hypothesis save the guilt of the accused is primarily a question for determination of the jury."[17] Therefore, "so long as there is slight evidence of access, power, and intention to exercise dominion or control over the contraband, the question of fact as to constructive possession remains with the jury."[18]

---

[10] (Citation and punctuation omitted.) *Coleman v. State*, 308 Ga. App. 731 (1) (708 SE2d 638) (2011).

[11] (Citation omitted.) Id.

[12] *Cheesman v. State*, 230 Ga. App. 525, 526 (1) (497 SE2d 40) (1998).

[13] (Punctuation and footnote omitted.) *Turner v. State*, 298 Ga. App. 107, 108 (679 SE2d 127) (2009).

[14] (Citation and footnote omitted.) *Wilson v. State*, 256 Ga. App. 741, 742 (1) (569 SE2d 640) (2002).

[15] (Citations and punctuation omitted.) *Prather v. State*, 293 Ga. App. 312, 313 (1) (667 SE2d 113) (2008).

[16] (Citation omitted; emphasis in original.) Id. The word " 'hypothesis' refers to such reasonable inferences as are ordinarily drawn by ordinary men in the light of their experience in everyday life." (Punctuation omitted.) Id.

[17] (Citation and punctuation omitted.) *Fortune v. State*, 304 Ga. App. 294, 297 (1) (696 SE2d 120) (2010).

[18] (Footnote omitted.) *Davenport v. State*, 308 Ga. App. 140, 145 (1) (b) (706 SE2d 757) (2011).

In the present case the trier of fact was presented with sufficient evidence to determine beyond a reasonable doubt that Bone was guilty of possessing methamphetamine. Such evidence includes Gravitt's testimony that he saw Bone tuck something into his waistband while still in the car, Bone's flight from law enforcement after being stopped for a minor traffic offense, the proximity of the methamphetamine to the location where Bone fell to the ground, and Bone's statement to Gravitt that he had exchanged drugs for use of the car. Bone argues that his passenger, Shawn Phillips, could have placed the drugs on the ground or alternately, the drugs could have been left there by a member of the general public. However, "whether or not in a given case circumstances are sufficient to exclude every reasonable hypothesis save the guilt of the accused is primarily a question for determination by the [trier of fact]."[19] Thus, the trier of fact was authorized to conclude that Bone either dropped or discarded the methamphetamine during the struggle with police when he fled from the traffic stop.[20]

*Judgment affirmed. Smith, P. J., and Dillard, J., concur.*

DECIDED AUGUST 15, 2011.

*Russell K. Walker*, for appellant.
*George H. Hartwig III, District Attorney*, for appellee.

---

[19] (Citation and punctuation omitted.) *Fortune*, supra at 297 (1).

[20] See *Grier v. State*, 273 Ga. App. 517, 518 (1) (615 SE2d 586) (2005) (where police found cocaine along the route where defendant fled, "the jury was authorized to conclude that [defendant] threw the cocaine at issue out of his pocket as he ran from or struggled with the police"); *Smith v. State*, 237 Ga. App. 616, 618 (1) (516 SE2d 319) (1999) (where police found cocaine beside the road where defendant swerved during a car chase, "the jury was authorized to infer that the cocaine found on the roadside was in [the defendant]'s possession until he abandoned it by throwing it out the car window").